William M. Fitzgerald
LAW OFFICES OF WILLIAM M. FITZGERALD
Second Floor, Macaranas Building
Beach Road, Garapan, Saipan, CNMI
Mail: PO Box 500909 Saipan MP 96950
Phone: 234-7241
Fax: 234-7530

Ramon K. Quichocho
LAW OFFICE OF RAMON K. QUICHOCHO, LLC
Second Floor, Sign Arts Building
Ch. Msgr. Guerrero, San Jose, Saipan, CNMI
Mail: PO Box 505621 Saipan MP 96950
Phone: 234-8946
Fax: 234-8920

Michael W. Dotts
Joseph E. Horey
O'CONNOR BERMAN DOTTS & BANES
Second Floor, Nauru Building
Marianas Business Plaza
Nauru Loop, Susupe, Saipan, CNMI
Mail: PO Box 501969 Saipan MP 96950
Phone: 234-5684
Fax: 234-5683

Attorneys for Defendant

IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08-00016 |
| Plaintiff, | BRIEF IN SUPPORT OF DEFENDANT'S PROPOSED JURY INSTRUCTIONS ON THE ELEMENTS OF THE OFFENSE |
| vs. | |
| LARRY BORJA HOCOG, | |
| Defendant. | |

## Introduction

Defendant's proposed jury instructions on the elements of the offense are a correct statement of the law and should be given to the jury in this case. They are taken verbatim from controlling Ninth Circuit case law, which holds that:

> to convict a practitioner under § 841(a), the government must prove (1) that the practitioner distributed controlled substances, (2) that the distribution of those controlled substances was outside the usual scope of professional practice and without a legitimate medical purpose, and (3) that the practitioner acted with intent

to distribute the drugs and with the intent to distribute them outside the course of professional practice.

United States v. Feingold, 454 F.3d 1001, 1008 (9th Cir. 2006) (emphasis omitted). Feingold, in turn, is based on the leading United States Supreme Court case on this issue, United States v. Moore, 423 U.S. 122 (1975). Moore and Feingold state what has been called the "medical exception" or the "good faith defense" for registered physicians charged – like Dr. Hocog in this case – with violating 21 U.S.C. § 841(a).

### The Good Faith Defense Is Available To Any Registered Physician

The question that arises in this case, of course, is whether the term "registered physician" (or "registrant," as the Court in Moore usually phrased it) simply means what it says – i.e., a doctor who is registered with DEA – or (as the Government now contends) a doctor who not only is registered, but also whose registration specifically authorizes him to dispense the particular controlled substance that he is charged with dispensing, under the particular circumstances under which he is charged with dispensing it.[1]

The better reading of Moore is that it refers to a doctor *who is registered* with the DEA, and not necessarily one whose registration authorizes the specific conduct he is charged with. In other words, it is the fact of registration that determines the availability of the good faith defense, not whether the particular terms of his particular registration are complied with. The first advantage of this reading is that it requires no speculative glosses on the meaning of Moore, only the application of its actual plain language. See, e.g., Moore, supra, 423 U.S. at 124 ("The issue in this case is whether *persons who are registered* under the Controlled Substances Act can be prosecuted under § 841 for dispensing or distributing controlled substances.") (emphasis added, citation omitted); id.

---

[1] The question of whether the defense is available to a doctor who is not registered with the DEA *at all* does not arise in this case.

2

("We . . . hold that *registered physicians* can be prosecuted under § 841 when their activities fall outside the usual course of professional practice.") (emphasis added). See also, e.g., United States v. Seelig, 622 F.2d 207, 212-213 (6th Cir. 1980) ("Implicit in Moore is that *registered doctors* (or other practitioners) are exempt from criminal liability under § 841(a)(1) unless they were acting outside the usual course of professional practice.") (emphasis added). There is no dispute that Dr. Hocog *is registered*. The only dispute is whether he exceeded the scope of his registration.

The facts of both Moore and Feingold support applying their rule to situations where registered doctors do exceed their registrations. In Moore, the very leading case recognizing the existence of the good faith defense, the defendant doctor may well have acted beyond "the extent authorized by [his] registration." Dr. Moore, we are told, was "registered under the Act," 423 U.S. at 124, but his necessary separate federal registration to use methadone in a "maintenance" (as opposed to "detoxification") program for drug addicts had been revoked. 423 U.S. at 125-126, 144-145.[2] The Court, however, did not indicate that it found that fact conclusive, or even relevant. If it had, it could have remanded for a determination of whether Dr. Moore had been conducting "maintenance" or "detoxification," and held that the good faith defense would be available to him only in the latter case. Instead, it described the defense as applicable to registered physicians in general terms, thus implicitly including those who, like Dr. Moore – and Dr. Hocog – allegedly exceeded the strict scope of their registrations.[3] Similarly in Feingold, the court held that a good

---

[2] A separate registration is now required for practitioners dispensing narcotic drugs in either detoxification or maintenance programs. 21 U.S.C. § 823(g)(1).

[3] The Eleventh Circuit in United States v. Blanton, 730 F.2d 1425, 1429-30 (11th Cir. 1984), which interpreted Moore as applying only to a doctor "dispensing drugs *for which he was registered*," id. at 1430, overlooked this aspect of Moore, perhaps because it was not explicit in the Supreme Court's opinion that Dr. Moore had been (in the prosecution's view of the case if not his own) acting beyond his authorization. It is clear from the Circuit Court's opinion, however, which quotes the government's bill of particulars as alleging that Dr. Moore
    was conducting methadone maintenance or maintaining drug addicts rather than

3

faith defense was legally available even though the defendant had prescribed substances that his state license no longer allowed him to prescribe. See 454 F.3d at 1012 ("He continued to prescribe Schedule II narcotics even after the state of Arizona had made it illegal for naturopathic physicians to do so[.]").[4] In both cases, the fact that the doctor had possibly acted beyond the strict terms of his legal authorization was treated as relevant to the factual question of whether he had actually acted in good faith, but it was never held to make the good faith defense categorically unavailable to him as a matter of law.

Furthermore, this construction better suits what Moore found to be the legislative purpose of the statutory distinction between Section 841 of the Controlled Substances Act, on the one hand, and Sections 842 and 843 on the other, namely to distinguish between legitimate and illegitimate channels of distribution. See 423 U.S. at 135.[5] By registering, a doctor opts into the legitimate

---

detoxifying them as he was only authorized to do by his regulations, and by his violation of these regulations he violated 841(a) of the CSA. United States v. Moore, 505 F.2d 426, 428 (D.C.Cir. 1973). The Circuit Court did not reach the question of whether Dr. Moore "was in fact maintaining addicts, detoxifying them, or simply pushing drugs," id. at 429, finding that his status as a registered physician made this irrelevant. The Supreme Court disagreed as to the third choice, finding it relevant whether Dr. Moore had been "simply pushing drugs," but still attached no significance to the distinction between the first two – i.e., between acting with or without the necessary specific federal authorization.

[4] Even if Dr. Feingold's DEA registration had not yet been amended to reflect this fact, it could and should have been; and the availability of the good faith defense to a doctor should not be made to hang solely on the fortuity of whether the DEA has yet acted to bring its registration into conformity with the state license.

[5] As Moore noted, there are three different sections of the Controlled Substances Act establishing "prohibited acts" – 21 U.S.C. §§ 841 ("Prohibited acts A"); 842 ("Prohibited acts B"); and 843 ("Prohibited acts C"); those under § 841 are punished by far the most severely; and the literal language of § 841 (prohibiting the dispensation of controlled substances "except as authorized by the subchapter") does not provide a clear basis for distinguishing § 841 violations from violations of §§ 842 or 843, since *all* of them prohibit acts not "authorized by this subchapter." Moore articulated the good faith rule as the method of distinguishing situations implicating § 841 from

4

system. He puts himself on the regulatory radar screen. His dealings with controlled substances become subject to government scrutiny and discipline. See, e.g., 21 U.S.C. § 824 (denial, revocation, or suspension of registration). The act of registering is itself a demonstration by the doctor of his own good faith and intent to operate within lawful bounds, which ought to protect him so long as he does not breach that good faith by intentionally acting outside any legitimate medical role.

Similarly, this construction accords with Moore's approach of determining the congressional intent based on the assumption that Congress intended there to be some reasonable proportionality between the penalties and the offenses.[6] See, e.g., 423 U.S. at 137 & fn.14 (finding it implausible that Congress would have intended to punish a physician who merely "us[ed] a suspended registration number" more severely than one actually who engaged in "drug trafficking," or to punish one who merely "dispense[d] a controlled substance not authorized by his registration to another registrant" as severely as one "who sold drugs solely for financial profit to nonregistrants"). In this case, it is equally implausible that Congress would have intended to punish a registered physician who dispenses a drug that is outside the scope of his registration, but who does so within the usual course of professional practice, and for a good faith and legitimate medical purpose,

---

those merely implicating §§ 842 or 843, holding that:
> the most sensible interpretation is that the penalty to be imposed for a violation was intended to turn on whether the transaction falls within or without legitimate channels. All persons who engage in legitimate transactions must be registered and are subject to penalties under §§ 842 and 843 for more or less technical violations. But severe criminal penalties were imposed on those . . . who sold drugs, not for legitimate purposes, but primarily for the profits to be derived therefore.

423 U.S. at 135 (internal quotation marks and citation omitted).

[6] Violations of § 841 carry a penalty of up to twenty years imprisonment. 21 U.S.C. § 841(b)(1)(C). Violations of § 842, by contrast, may be punished by a maximum of one year. 21 U.S.C. § 842(a)(1). Violations of § 843 are in-between, with a maximum penalty of four years. 21 U.S.C. § 843(d)(1).

- as severely as a street-corner pusher with no medical legitimacy whatsoever;
- five times more severely than a person (including a non-registrant or even a non-physician) whose uses a registration number that is "fictitious, revoked, suspended, expired, or issued to another person" (21 U.S.C. § 843(a)(2)); and
- twenty times more severely than a person (including a non-registrant or non-physician[7]) who dispenses a controlled substances without the authorization of any person licensed to do so (21 U.S.C. § 842(a)(1)).

Finally, this construction is supported by the structure of the statutory language in 21 U.S.C. § 822(b), which authorizes persons registered under the Act to manufacture, distribute, or dispense controlled substances "to the extent authorized by their registration and in conformity with the other provisions of this subchapter." In stating what conduct is authorized for registrants, Section 822(b) *does not distinguish in any way* between the two limiting phrases, "to the extent authorized by their registration," and "in conformity with the other provisions of this subchapter." In other words, a registrant is limited in the same way, to the same extent, and for the same reason, by the terms of his registration *and* by the other statutory provisions of the Act – which, as construed, includes the regulations as well. See Seelig, supra, 622 F.2d at 210-211. Therefore, if the good faith defense is available to a registrant with respect to conduct not "in conformity with the other provisions" of the Act or its regulations – and Moore and Feingold clearly teach that it is – then it must also be available, for the same reason, with respect to conduct not "authorized by [his] registration." Breach of the registration, in other words, is of the same criminal character as breach of the regulations – no more and no less. With respect to either type of conduct, the doctor may be penalized under Section 842 and 843, as appropriate. He may even be penalized under Section 841 *if* his conduct

---

[7] Moore construes the term "any person who is subject to the requirements of part C" in 21 U.S.C. § 842(a)(1) to reach "those who should have registered but failed to do so." 423 U.S. at 134 fn.11.

6

reaches the point that he steps outside of professional practice and acts for no legitimate medical purpose. But so long as he remains within the bounds of professional practice and medical good faith, he is protected by the good faith defense from conviction under Section 841.[8]

## Conclusion

It is important to note that this good faith defense applies to the specific law that Dr. Hocog is charged with violating in this case, namely 21 U.S.C. § 841(a). The question before the jury in this case is limited to whether he violated *that specific section* of the law, not the more general question of whether he violated any provision of the Controlled Substances Act, as, for example, in ways that would violate only Sections 842 or 843. Under the Indictment, this is a Section 841 case only. It is significant to note, therefore, that Dr. Hocog could be tried equally well under Section 842 based on the same facts alleged in the Indictment to constitute a violation of Section 841, *without even removing any element alleged.*[9] The very fact that this is possible indicates that the

---

[8] The Eleventh Circuit in Blanton missed this point altogether. It did not even quote the full language of Section 822(b), stopping after the words "to the extent authorized by their registration," which it specially emphasized. See 730 F.2d at 1429. To rely on and emphasize that phrase alone, without considering that it is paired with the following phrase "and in conformity with the other provisions of this subchapter," results in a distorted reading of the statute, and one which violates the cardinal statutory construction rule of *noscitur a sociis* (it is known by its associates – i.e., the meaning of a statutory word or phrase is clarified by the other words and phrases with which it appears).

[9] The Indictment alleges that Dr. Hocog:
did knowingly and unlawfully distribute and dispense a Schedule II controlled substance . . . despite a restriction on his Drug Enforcement Administration Controlled Substance Registration Certificate and his Commonwealth of the Northern Mariana Islands License to Practice Medicine

If proven, this would establish a violation of 21 U.S.C. § 842(a)(1) ("It shall be unlawful for any person who is subject to the requirements of part C to distribute or dispense a controlled substance in violation of section 829 of this title[.]"). Section 829 prohibits the dispensing of Schedule II substances except by, or with the written prescription of, a "practitioner," 21 U.S.C. § 829(a), and 21 U.S.C. § 802(21) defines a "practitioner" as a person "licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices" to dispense a controlled substance.

Government's view of the case does not comport with the congressional scheme of three distinct levels of criminal liability for violations of the Act. In order for those allegations to actually rise to the level of a Section 841 felony, rather than a Section 842 misdemeanor, the additional element is necessary that Dr. Hocog have intentionally acted outside the usual course of professional practice and without a legitimate medical purpose. Defendant's proposed instructions so state, and thus are correct and should be given to the jury.

Respectfully submitted this 9th day of July, 2008.

LAW OFFICES OF WILLIAM M. FITZGERALD
Attorney for Defendant


by:_____/s/_____
         William M. Fitzgerald


LAW OFFICES OF RAMON K. QUICHOCHO        O'CONNOR BERMAN DOTTS & BANES
Attorneys for Defendant                                         Attorneys for Defendant


by:_____/s/_____         by:_____/s/_____
         Ramon K. Quichocho                                Michael W. Dotts
                                                                            Joseph E. Horey

*3391-02-080708-brief re instructions 3.wpd*

8